619 A.2d 359

**COMMONWEALTH of Pennsylvania**

v.

**James BATTIATO, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 23, 1992.

Filed Jan. 21, 1993.

Joseph T. Bambrick, West Reading, for appellant.

Narcy L. Hughes, Asst. Dist. Atty., Reading, for Com., appellee.

Before WIEAND, FORD ELLIOTT and HOFFMAN, JJ.

WIEAND, Judge:

James A. Battiato was tried by jury and was found guilty of two counts of aggravated assault,[1] and also of recklessly endangering another person[2] and criminal mischief.[3] Post-trial and supplemental post-trial motions were filed and denied following an evidentiary hearing. Battiato was thereafter sentenced on the first count of aggravated assault to a term of imprisonment for not less than eight (8) years nor more than sixteen (16) years.[4] On his conviction for criminal mischief, which was graded as a summary offense, Battiato was sentenced to pay a fine of two hundred ($200.00) dollars.[5] On direct appeal from the judgment of sentence, Battiato argues that there was insufficient evidence to sustain his convictions and that he was denied a fair trial because of numerous

1. 18 Pa.C.S. §§ 2702(a)(1) and (a)(4).

2. 18 Pa.C.S. § 2705.

3. 18 Pa.C.S. § 3304.

4. The convictions on the second count of aggravated assault and for recklessly endangering another person were deemed to merge into the first count of aggravated assault for purposes of sentencing.

5. As a result of his conviction for the instant offenses, Battiato was found to have violated the conditions of a previous probationary sentence, and, upon revocation of probation, received an additional sentence of imprisonment. In a separate appeal filed by Battiato, this Court affirmed the order revoking his probation and the judgment of sentenced imposed thereon. See: Memorandum Decision in *Commonwealth v. Battiato*, (J. A42030/92; No. 715 Philadelphia, 1992; filed December 4, 1992).

instances of prosecutorial misconduct. Finding no merit in any of these contentions, we affirm the judgment of sentence.

 In reviewing a challenge to the sufficiency of the evidence, we must determine "whether, viewing all the evidence admitted at trial, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth as the verdict winner, the jury could have found that each and every element of the charged offenses was proved beyond a reasonable doubt." *Commonwealth v. Sanchez*, 416 Pa.Super. 160, 166, 610 A.2d 1020, 1023 (1992). See also: *Commonwealth v. Smith*, 523 Pa. 577, 581, 568 A.2d 600, 602 (1989); *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). "[I]t is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence." *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979). See also: *Commonwealth v. Guest*, 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983); *Commonwealth v. Rose*, 463 Pa. 264, 268, 344 A.2d 824, 826 (1975). The facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.' " *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati*, 346 Pa. 504, 508, 31 A.2d 95, 97 (1943). See also: *Commonwealth v. Kravitz*, 400 Pa. 198, 215, 161 A.2d 861, 869 (1960), *cert. denied*, 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961).

 So viewed, the evidence at appellant's trial established the following. On February 23, 1991, at or about 7:30 a.m., Donna Miller was taken by her friend, Vicki Thomas, together with Thomas's boyfriend, Dane Skinner, to pick up her automobile, which had been involved in an accident earlier that morning. After Miller picked up her own vehicle, she drove along Route 61 and was headed to the home of Richard

Gerner, with whom she had begun a relationship. After driving for a while, Miller pulled her vehicle off to the side of the road, and Vicki Thomas and Dane Skinner, who had been following her in Thomas's vehicle, stopped to the rear of her vehicle. While they were stopped, the appellant, Battiato, appeared in a large maroon automobile, which he pulled off the road and parked in front of Miller's vehicle. Miller had been living with appellant, but was in the process of breaking up with him. Appellant approached Miller and asked her if she was going to come with him, and if she didn't want to be with him anymore, to which Miller replied, "No. Just leave me alone."

After this brief conversation, Miller pulled her vehicle back onto Route 61 and continued her journey, again followed by Thomas and Skinner. Appellant entered his vehicle and followed the Miller and Thomas vehicles. A short time later, appellant passed Miller's vehicle, pulled in front of her, and slammed his brakes on. Miller slowed her vehicle, moved it into the left lane and passed appellant. When Thomas also attempted to pass, appellant swerved his vehicle toward the Thomas vehicle as it passed. After both Miller and Thomas had passed appellant, they approached and stopped for the traffic signal at the intersection of Routes 61 and 662 in Shoemakersville. Miller stopped in the right lane and Thomas pulled her vehicle alongside Miller's in the left lane. Appellant then also stopped his vehicle a short distance behind Miller's. While the traffic light was still red, Dane Skinner began to open the passenger side door of Thomas's vehicle, intending to get out of the car to confront appellant and ask him why he had been trying to run them off the road. However, as Skinner was opening the passenger side door, appellant accelerated his vehicle and struck both Skinner and the door of Vicki Thomas's vehicle, a black Chevrolet Beretta. After striking Skinner, appellant backed up his vehicle and parked it in a nearby parking lot. Donna Miller went to Skinner's aid, while Vicki Thomas went to call for help. As Skinner lay on the road, appellant approached him and yelled "Fuck with me some more." Appellant then brought his foot

back, appearing to be ready to kick the prone Skinner, but when Miller asked appellant what he was doing, he entered his car and drove away.

As a result of being struck by appellant's vehicle, Dane Skinner suffered a compound fracture of the left tibia, which was broken in four places, along with two torn ligaments and a broken tibia in his right leg. At trial, the defense stipulated that appellant had been the driver of the vehicle which struck Skinner, but contended that it had been an accident. Appellant testified that he had been asked by Donna Miller's parents to take her car away from her because it had been damaged in an accident.[6] According to appellant, Miller refused to come with him and, after a brief conversation, drove away. While stopped at the traffic light, appellant testified that he had started to back up his vehicle, but that he must have hit the gear shift, and, that, as his car lunged forward, he accidentally hit the accelerator pedal instead of the brake. Appellant said he fled the scene of the accident because he was frightened.

Appellant was charged with two counts of aggravated assault under 18 Pa.C.S. §§ 2702(a)(1) and (a)(4), which provide as follows:

(a) Offense defined.—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; [and]

. . . .

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon. . . .

Appellant argues that the evidence at trial failed to show that he had acted with the requisite malice. What occurred, he

6. In his appellate brief, appellant states that Donna Miller's mother testified at trial that she had asked appellant to pick up her daughter's car. However, our review of the record does not disclose that Ms. Miller's mother testified at appellant's trial.

suggests, was a simple traffic accident. In support of this contention, appellant asserts that there had been no previous contact between him and Vicki Thomas or Dane Skinner and that he had had no reason, therefore, for hitting Skinner or Thomas's vehicle with his car.

The evidence at trial disclosed that appellant and Donna Miller had been living together at the time of the incident, but that Miller had been planning to leave appellant. Prior to the incident, appellant and Miller had engaged in a brief conversation in which Miller had refused to return home with appellant and had told him to leave her alone. Thereafter, appellant continued to follow the Miller and Thomas vehicles. In one instance, he cut in front of Donna Miller's car and applied his brakes, forcing her to slow down. When Miller and Vicki Thomas subsequently passed appellant's vehicle, he swerved his car at the Thomas vehicle. Indeed, it was when Dane Skinner attempted to get out of the Thomas vehicle to confront him that appellant accelerated his vehicle forward and struck both Skinner and the Thomas vehicle. After striking Skinner, appellant approached his injured victim and yelled at him, "Fuck with me some more." He then fled the scene in his car. From his conduct, both prior to and immediately following the striking of Dane Skinner, a jury could reasonably infer that appellant had acted intentionally when he struck Skinner. At the very least, it could conclude that appellant acted recklessly with extreme indifference to the value of human life. The evidence, therefore, was sufficient to sustain appellant's convictions for aggravated assault.

■ Appellant also argues that extending the crime of recklessly endangering another person to mere traffic accidents is to read 18 Pa.C.S. § 2705 [7] in an overly broad manner. This contention is wholly lacking in merit, for, as we have already observed, the evidence was sufficient to permit a jury to find that appellant's actions toward Dane Skinner had been

7. 18 Pa.C.S. § 2705 provides:

**§ 2705. Recklessly endangering another person**

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

intentional, rather than the result of an accident. By such conduct, appellant not only placed another person in danger of being killed or seriously injured, but actually caused serious bodily injury to Dane Skinner. The evidence, therefore, was sufficient also to sustain appellant's conviction for recklessly endangering another person.

The crime of criminal mischief is defined by statute as follows:

(a) **Offense defined.**—A person is guilty of criminal mischief if he:

(1) damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe);

(2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property; or

(3) intentionally or recklessly causes another to suffer pecuniary loss by deception or threat.

(b) **Grading.**—Criminal mischief is a felony of the third degree if the actor intentionally causes pecuniary loss in excess of $5,000, or a substantial interruption or impairment of public communication, transportation, supply of water, gas or power, or other public service. It is a misdemeanor of the second degree if the actor intentionally causes pecuniary loss in excess of $1,000, or a misdemeanor of the third degree if he intentionally or recklessly causes pecuniary loss in excess of $500. Otherwise criminal mischief is a summary offense.

18 Pa.C.S. § 3304. Appellant argues that proof of monetary damages is an essential element of the crime. Inasmuch as the Commonwealth failed to present competent evidence to establish the amount of damage to Vicki Thomas's car, appellant argues, his conviction for criminal mischief cannot stand.

Where criminal mischief is charged as a felony or misdemeanor, the monetary value of the damage caused by the defendant is an essential element of the offense. See: *In*

*re Gillen*, 236 Pa.Super. 521, 525, 344 A.2d 706, 708 (1975). However, proof of pecuniary loss is not required under 18 Pa.C.S. § 3304, when criminal mischief is charged as a summary offense. *Commonwealth v. Kincade*, 358 Pa.Super. 591, 594–595, 518 A.2d 297, 299 (1986). Instantly, appellant was originally charged with criminal mischief as a misdemeanor of the second degree, but in response to a defense demurrer, the trial court reduced the grade of the offense to a summary offense "because the Commonwealth ha[d] failed to prove that the damages were in excess of $1,000." Accordingly, the amount of damage to Vicki Thomas's vehicle was not an element of the offense of which appellant was found guilty. Therefore, the challenge to the sufficiency of the evidence to sustain appellant's conviction for criminal mischief must fail.

■ Appellant's first averment of prosecutorial misconduct is that the assistant district attorney, on at least thirty-five occasions during the trial, asked improper questions or attempted to introduce cumulative evidence, which thereby caused defense counsel to object and the trial court to sustain objections. According to appellant, he was thereby denied a fair trial. The trial was unfair, he suggests, even though the trial court excluded any improper evidence, because appellant was forced to make repeated objections. Because of his many objections, he argues, the jury was left with the impression that the defense was trying to hide evidence. There is no merit in this contention.

■ Not every unwise remark or improper question asked by a district attorney during the course of a trial compels the granting of a new trial. See: *Commonwealth v. Faulkner*, 528 Pa. 57, 77, 595 A.2d 28, 39 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992); *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973). Reversible error occurs only when the conduct of the prosecutor is such that its unavoidable effect is " 'to prejudice the [jurors], forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.' " *Commonwealth v. Strong*, 522 Pa. 445, 454, 563 A.2d 479, 483 (1989), *cert. denied*, 494 U.S.

1060, 110 S.Ct. 1536, 108 L.Ed.2d 775 (1990), quoting *Commonwealth v. McNeal,* 456 Pa. 394, 400, 319 A.2d 669, 673 (1974).

Here, most of the defense objections were to the form of the prosecutor's questions and not to attempts to introduce improper and unfairly prejudicial evidence. In each instance the trial court sustained an objection by the defense and thereby prevented any possibility of prejudice to the defendant. The fact that the trial court sustained thirty-five defense objections in a two day trial is not per se a basis for awarding a new trial, and appellant has failed to identify anything which prevented the jury from deliberating fairly and reaching a verdict upon proper evidence duly offered and received at trial.

■ Appellant next asserts that the prosecuting attorney directly violated the trial court's ruling upon a defense motion in limine to preclude Commonwealth witness James Garcia from identifying appellant at trial as the driver of the vehicle which struck Dane Skinner. At trial, the prosecutor asked the witness to describe the individual whom he had observed. At this point, defense counsel objected and a side bar conference ensued. At the conclusion of the side bar conference, defense counsel withdrew his objection and the trial court instructed the witness to answer the question.

The argument made by appellant that the prosecutor violated the trial court's ruling on the motion in limine is specious. The prosecutor did not ask the witness to identify appellant as the person whom he had observed, and, in fact, specifically instructed the witness not to identify appellant. The question asked merely called for the witness to describe the individual whom he had observed. To this question, in fact, defense counsel withdrew his objection following the side bar conference. The evidence, in any event, was harmless, for the defense had stipulated that appellant was the driver of the vehicle which struck Dane Skinner.

■ The final averment of prosecutorial misconduct is that the assistant district attorney failed to disclose to the defense that Commonwealth witness, Donna Miller, had criminal

charges pending against her at the time of appellant's trial, and that shortly after appellant's conviction Miller was accepted into the ARD program. Because of this omission, appellant contends, he was precluded from demonstrating at trial the possible bias of Miller. This issue was the subject of a post-trial evidentiary hearing at which it was disclosed that Donna Miller had been arrested on May 19, 1991 for driving while under the influence of alcohol, possession of marijuana and disorderly conduct. After testifying at appellant's trial on July 2, 1991, Miller was placed in the Accelerated Rehabilitative Disposition (ARD) program on August 27, 1991. The assistant district attorney who prosecuted appellant testified at the post-trial hearing that he had had no knowledge at the time of appellant's trial that Miller had been arrested and that charges were pending against her. Donna Miller testified also that she had received no promises from the District Attorney's Office in return for testifying at appellant's trial, and, in fact, had had no discussions at that time with anyone from the District Attorney's Office regarding the charges which had been brought against her.

In *Commonwealth v. Evans,* 511 Pa. 214, 512 A.2d 626 (1986), the Pennsylvania Supreme Court declared that:

whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the jury should know about it.

*Id.* at 224–225, 512 A.2d at 631–632. Therefore, the Superior Court has recently observed:

As a general rule, defense counsel must be permitted to cross-examine a Commonwealth witness on possible favorable treatment or expectations of such favorable treatment in exchange for testimony for the prosecution. Failure to

allow cross-examination to reveal possible bias of this nature is error and will require a new trial unless the error can be shown to have had no impact on the outcome of the case. *See Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986); *Commonwealth v. Jennings*, 405 Pa.Super. 590, 592 A.2d 1370 (1991); *Commonwealth v. Blassingale*, 391 Pa.Super. 395, 571 A.2d 426 (1990). The principle upon which this rule is premised is that the jury should have the opportunity to consider information concerning possible ulterior motives on the part of the witness in order accurately to assess the witness' credibility.

*Commonwealth v. Culmer*, 413 Pa.Super. 203, 212, 604 A.2d 1090, 1094–1095 (1992). The rule pertains to relevancy and, therefore, the admissibility of evidence.

However, it is also the law in this Commonwealth that "the prosecution does not violate discovery rules when it fails to provide the defense with evidence that it does not possess and of which it is unaware during pre-trial discovery, even if the evidence is in police custody." *Commonwealth v. Bonacurso*, 500 Pa. 247, 251 n. 3, 455 A.2d 1175, 1177 n. 3 (1983), *cert. denied*, 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983). See also: *Commonwealth v. Rakes*, 398 Pa.Super. 440, 444, 581 A.2d 212, 214 (1990); *Commonwealth v. Woodell*, 344 Pa.Super. 487, 491, 496 A.2d 1210, 1212 (1985); *Commonwealth v. Gelormo*, 327 Pa.Super. 219, 231, 475 A.2d 765, 771 (1984). Although the prosecution has a duty to disclose exculpatory evidence to the defense pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Commonwealth does not violate that duty "by failing to disclose evidence that it does not have and of which it is not aware." *Commonwealth v. Colson*, 507 Pa. 440, 461–462, 490 A.2d 811, 822 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986).

In the instant case, had the prosecuting attorney been aware of the charges pending against Donna Miller, he would have had a clear duty to disclose such information to the defense. However, testimony at the post-trial evidentiary hearing, which was found credible by the trial court, disclosed

that the prosecuting attorney had been unaware of the charges pending against Miller, and that Miller had not discussed the charges against her with any representative of the District Attorney's Office prior to the time of appellant's trial. The preliminary hearing had been held only ten days prior to appellant's trial, and the evidence was that no one from the District Attorney's Office had been present. Thus, there is no evidence that anyone in the District Attorney's Office was aware at the time of appellant's trial that criminal charges had been brought against Miller. Under these circumstances, we can find no error in the trial court's determination that the prosecuting attorney was not guilty of prosecutorial misconduct.

The judgment of sentence is affirmed.