J-S14015-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER MICHAEL MALIK | : | |
| | : | |
| Appellant | : | No. 1072 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 23, 2023
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0002280-2022

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.:            **FILED: SEPTEMBER 10, 2024**

Christopher Michael Malik appeals from the judgment of sentence, entered in the Court of Common Pleas of Cumberland County, after a jury convicted him of a single count of delivery—methamphetamine.[1]  Malik challenges the sufficiency of evidence, the weight of the evidence, and the trial court's evidentiary rulings with respect to the Commonwealth's confidential informant (CI).  Upon careful review, we affirm.

The trial court set out the relevant factual history as follows:

Pennsylvania State Police Trooper Shawn Wolfe, who had been a member of the Vice and Narcotics Unit since 2007, testified that on April 20, 2022, he was working with a [CI] to purchase a sum of methamphetamine from [Malik].  Trooper Wolfe directed the [CI] to call [Malik] and order a half-ounce of methamphetamine, which the [CI] did in the trooper's presence.  Trooper Wolfe searched the [CI] to ensure he had no contraband on his person

---

[1] **See** 35 P.S. § 780-113(a)(30).

and provided the [CI] with $300 cash (the cost of one half-ounce of methamphetamine).

While the [CI] was still in Trooper Wolfe's vehicle awaiting the transaction, Trooper Wolfe had three other troopers in three separate undercover vehicles surveilling [Malik] and the Sheetz [convenience store, where the CI had agreed to meet Malik,] at Allen Road and Ritner Highway in Carlisle, Cumberland County. All surveillance units, including Trooper Wolfe[,] who had the [CI] in his vehicle, followed [Malik] from his hotel[,] where [Malik] was residing[,] to a residence in Carlisle. Two surveillance units remained at that residence while Trooper Wolfe continued on in his vehicle, carrying the [CI], to the Sheetz, as did another surveillance unit, to await [Malik]'s arrival.

All four units were present at the Sheetz when [Malik] later arrived alone in his vehicle, a GMC Envoy. Trooper Wolfe was parked at the gas pumps when [Malik] arrived at the Sheetz and drove up behind Trooper Wolfe's vehicle. The [CI] exited the trooper's vehicle and entered [Malik's] vehicle, at which time the two were the sole occupants of [Malik's] vehicle. Trooper Wolfe observed [Malik] drive to the front door of the Sheetz, at which time [Malik] and the [CI] remained in [Malik's] vehicle for one to two minutes before they exited the vehicle. [Malik] and the [CI] engaged in "some type of discussion along the passenger's side of the GMC Envoy" before the [CI] returned to Trooper Wolfe's vehicle. Trooper Wolfe said the [CI] did not leave the trooper's vehicle until [Malik] arrived and that he returned to the trooper's vehicle immediately after leaving [Malik].

Upon the [CI's] return to Trooper Wolfe's vehicle, the [CI] and Trooper Wolfe returned to their "pre-meet location" where the [CI] provided Trooper Wolfe with methamphetamine in a small plastic Ziploc [storage bag] and Trooper Wolfe searched the [CI] for any other contraband or currency with negative results. Trooper Wolfe conducted a field test of the methamphetamine, which presumptively identified the substance as methamphetamine.

Trial Court Opinion, 9/29/23, at 2-4 (footnotes omitted, paragraph breaks added for clarity). On May 23, 2023, following the jury's conviction after a two-day trial, the trial court, with the benefit of a court-ordered pre-sentence investigation, sentenced Malik to 6-23 months' incarceration. On June 2,

2023, Malik filed a timely post-sentence motion requesting a new trial. He argued that the verdict was against the weight of the evidence and moved to modify the sentence to authorize work release. On June 27, 2023, the court granted Malik's motion to modify sentence with respect to work release eligibility[2] and denied the motion in all other respects.

Malik filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Malik raises the following claims for our review:

1. Whether the evidence was insufficient to sustain the verdict of guilt?

2. Whether the verdict was against the weight of the evidence?

3. Whether the trial court abused its discretion in excluding evidence of the [CI's] criminal record and in restricting cross-examination and direct examination of witnesses concerning the identity, criminal background, and other information concerning the [CI]?

Appellant's Brief, at 5 (unnecessary capitalization omitted).

Malik first asserts that the evidence at trial was insufficient to support his conviction beyond a reasonable doubt. *See* Appellant's Brief, at 8. Malik contends that his "mere presence at the Sheetz store is insufficient to sustain his conviction for delivery of methamphetamine." *Id.* at 9. Malik also suggests that the Commonwealth failed to meet the sufficiency threshold by not introducing phone records, obtaining video surveillance, or searching the

---

[2] The trial court previously granted work release eligibility at sentencing. *See* Order, 5/23/23.

surrounding areas for other individuals who could have been present during the drug buy. *Id.* at 11. Malik further takes issue with Trooper Wolfe misstating the date of the drug buy and the use of the CI, considering the CI's pending criminal charges. *Id.* at 9-10, 12-13.

In reviewing a challenge to the sufficiency of the evidence, "we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt." ***Commonwealth v. Randall***, 758 A.2d 669, 674 (Pa. Super. 2000) (citations omitted). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct[,] so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." ***Commonwealth v. Swerdlow***, 636 A.2d 1173, 1176 (Pa. Super. 1994) (citation omitted). "The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, and the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011). We will not "substitute our judgment for that of the factfinder; if the record contains support for the convictions[,] they may not be disturbed." ***Commonwealth v. Brewer***, 876 A.2d 1029, 1032 (Pa. Super. 2005) (quotations omitted). Finally, "[b]ecause evidentiary sufficiency is a question

of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013).

To sustain a conviction for unlawful delivery of a controlled substance, the Commonwealth must establish that Malik delivered a controlled substance without legal authority. Regarding the element of delivery, the law requires "evidence that [a defendant] knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so." ***Commonwealth v. Murphy***, 844 A.2d 1228, 1234 (Pa. 2004); ***see also*** 35 P.S. § 780-102. "A defendant actually transfers drugs whenever he physically conveys drugs to another person." ***Murphy***, 844 A.2d at 1234. Further, we establish that "mere presence at the scene of a crime is insufficient to establish guilt." ***Commonwealth v. Wagaman***, 627 A.2d 735, 737 (Pa. Super. 1993).

Instantly, the Commonwealth adduced evidence at trial that the State Police conducted a controlled transaction where "[they] attempt[ed] to control every aspect of the investigation." ***See*** N.T. Trial, 3/28/23, at 37. Trooper Wolfe testified that he directed the CI to call Malik and order a half-ounce of methamphetamine, which the CI did in the Trooper's presence. ***See id.*** at 41; N.T. Trial, 3/29/23, at 18. Trooper Wolfe then searched the CI to ensure he had no contraband on his person and provided him with $300 cash for the buy. ***See*** N.T. Trial, 3/28/23, at 41. The State Police also had multiple units surveilling the CI as he met with Malik. ***See id.*** at 41-45; N.T. Trial, 3/29/23,

at 42. The CI did not leave Trooper Wolfe's vehicle until Malik arrived and the CI returned to Trooper Wolfe's vehicle immediately after completing his interaction with Malik. *See* N.T. Trial, 3/29/23, at 100-02. Upon the CI's return to Trooper Wolfe's car, they drove to their pre-meet location. *See* N.T. Trial, 3/28/23, at 48. There, the CI provided Trooper Wolfe with the methamphetamine, and Trooper Wolfe searched the CI for any other contraband or currency with negative results. *See id.* The recovered substance was presumptively field tested positive for methamphetamine, and a forensic scientist with the Pennsylvania State Police Bureau of Forensic Services Harrisburg Regional Laboratory later confirmed this finding. *See id.*; N.T. Trial, 3/29/23, at 49-53. Corporal Justin Long, also present at the buy, testified and introduced photos depicting Malik outside of the Sheetz in front of his vehicle. *See* N.T. Trial, 3/29/23, at 55-57.

Viewed in the light most favorable to the Commonwealth, contrary to Malik's claims, we conclude that the testimony and evidence presented at trial were sufficient to prove that Malik delivered the methamphetamine to the CI. Furthermore, the jury received proper instructions on the definition of delivery. *See* N.T. Trial, 3/29/23, Exhibit 1. The jury could reasonably infer, based on the testimony of Trooper Wolfe and Corporal Long regarding the controlled nature of the operation, that Malik did deliver the methamphetamine to the CI. *See Swerdlow*, *supra*; *Murphy*, *supra*. Malik's conviction may be sustained based on circumstantial evidence alone.

- 6 -

*See Ramtahal*, at 607. Therefore, we will not disturb the jury's finding. *Brewer*, *supra*. Consequently, we conclude that the jury had sufficient evidence to convict Malik of a single count of unlawful delivery of a Schedule II controlled substance—methamphetamine. Moreover, to the extent that Malik argues that Trooper Wolfe is not credible because he misstated the relevant date, that issue is relevant to the weight of the evidence rather than the sufficiency and we will consider that claim next.

> The distinction between a claim challenging the sufficiency of evidence and a claim challenging the weight of evidence is critical. A motion for a new trial . . . claims that[,] notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. A claim challenging the sufficiency of the evidence, however, asserts that there is insufficient evidence to support at least one material element of the crime for which Appellant has been convicted.

*Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003) (citations and quotation marks omitted).

Malik's second claim is that the verdict was against the weight of the evidence. *See* Appellant's Brief, at 15. Malik argues that the Commonwealth failed to present evidence of the April 20, 2022 phone call setting up the meeting with Malik and the phone number's owner. *Id.* Malik also takes issue with the lack of video evidence of the transaction and contends that the drug sale was not fully controlled because the CI went out of the officers' view. *Id.* at 17. Malik then asserts that the CI is the only person who could testify about what allegedly happened inside the vehicle because the transaction was out

of view of the officers, yet the Commonwealth did not call the CI as a witness at trial.  *Id.* at 17-18.  We also recognize Malik's argument that Trooper Wolfe is not credible because he misstated the date of the controlled buy.  *Id.* at 9.

The standard of review of a claim that a verdict is against the weight of the evidence is well-established:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.  It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and quotation marks omitted).  To successfully challenge the weight of the evidence, a defendant must prove the evidence is "so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court."  *Commonwealth v. Mucci*, 143 A.3d 399, 410-11 (Pa. Super. 2016) (citation and quotation marks omitted).  Furthermore, we do not substitute our judgment for that of the finder of fact*.  See Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa. Super. 2012).  The trial court's ruling regarding a challenge to the weight of the evidence is one of the "least assailable" trial court determinations.  *Clay,* 64 A.3d at 1055 (citation omitted).

Malik properly preserved his weight of the evidence claim by raising it in his June 2, 2023 post-sentence motion, which the trial court denied. Therefore, we now address the merits of Malik's claim. *See* Pa.R.Crim.P. 607(A)(3).

Upon our review, we conclude that testimony from Trooper Wolfe and Corporal Long was specific and provided detail as to the interaction between Malik and the CI; indeed, the evidence was not vague or uncertain. *See Mucci*, *supra*. The trial court did not find "the verdict to be against the weight of the evidence" and concluded that Malik's "attempt to undercut the weight of the Commonwealth's evidence [did not] turn the balance."[3] Trial Court Opinion, 9/29/2023, at 9. The jury was free to weigh the evidence and accept or reject the arguments presented and found the testimony of Trooper Wolfe and Corporal Long to be credible, in contrast to Malik's testimony. *See Mucci*, *supra*. Accordingly, we discern no abuse of discretion by the trial court.

Finally, Malik alleges the trial court abused its discretion by limiting testimony and the questioning of witnesses concerning the CI. Malik makes three sub-arguments: (1) that the trial court erred by not permitting the disclosure of the CI's name; (2) that the trial court erred by not permitting

---

[3] Malik argued that the Commonwealth purposely chose not to call the CI as a witness at trial. *See* Appellant's Brief, at 16. However, as made clear in his brief, Malik himself knew the CI's identity and did not call him as a witness to rebut the Commonwealth's evidence. *See* Appellant's Brief, at 18; N.T. Trial, 3/29/23, at 79.

- 9 -

questions about the CI's criminal record; (3) that the trial court improperly limited the scope of cross-examination regarding the CI's pending criminal charges.

"It is well settled that evidentiary rulings are within the sound discretion of trial courts." *Commonwealth v. Distefano*, 265 A.3d 290, 297 (Pa. 2021). An appellant seeking to reverse a trial court's evidentiary ruling "carries a heavy burden to demonstrate that the trial court abused its discretion." *Id.* "Discretion is abused when the course pursued [by the trial court] represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." *Commonwealth v. Smith*, 681 A.2d 1288, 1290 (Pa. 1996) (citation and quotation marks omitted).

In his first sub-issue, Malik argues that the trial court erred by not permitting the disclosure of the CI's name. *See* Appellant's Brief, at 19. Malik claims that "this information should have been permitted to be disclosed during direct examination because it was relevant for the jury to know who the [CI] was." *Id.* at 23. Malik has waived this claim.

When a case involves a CI, "[t]he Commonwealth retains a qualified privilege not to disclose an informant's identity." *Commonwealth v. Withrow*, 932 A.2d 138, 140-41 (Pa. Super. 2007). "To overcome that privilege, the defendant must show that his request for disclosure is

reasonable[,] and that the information sought to be obtained through disclosure is material to the defense." ***Id.***

Malik failed to argue, as required, at both trial and on appeal that his request for the CI's name was reasonable. ***See*** N.T. Trial, 3/29/23, at 20; Appellant's Brief, at 23. Moreover, in his two-paragraph discussion on this sub-issue, Malik failed to cite to controlling case law or any rules of evidence that support his claim. Appellant's Brief, at 19-20. "The failure to develop an adequate argument in an appellate brief may [] result in waiver of the claim under Pa.R.A.P. 2119." ***Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007) (citations and quotation marks omitted); ***see also Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (explaining appellant's briefing requirement and duties to present arguments sufficiently developed for review; "Court will not act as counsel and will not develop arguments on behalf of an appellant"). Malik failed to develop this claim, and therefore, this sub-argument is waived.

Malik's second sub-argument is that the trial court erred by not permitting questions about the CI's criminal record. Malik again fails to develop this argument by citing to any authority or the certified record. ***See Beshore***, ***supra***; ***Hardy***, ***supra***. An appellant is required to provide "such discussion and citation of authorities as are deemed pertinent" in the argument section of his brief. Pa.R.A.P. 2119(a). ***See also Commonwealth v. B.D.G.***, 959 A.2d 362, 371-72 (Pa. Super. 2008) ("When an appellant fails

to develop his issue in an argument and fails to cite any legal authority, the issue is waived."); *Beshore*, 916 A.2d at 1140 (failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119). We, therefore, find this sub-argument waived.

Malik's third sub-argument is that the trial court improperly limited the scope of cross-examination regarding the CI's pending criminal charges. *See* Appellant's Brief at 21-25. Malik argues that the pending criminal docket was "relevant for the jury to know who the CI was" and it "would have given the CI a reason to be involved in this matter as a cooperating individual and to potentially give him motivation to be less than truthful concerning [Malik's] involvement because the CI had a lot to gain by implicating Christopher Malik." Appellant's Brief, at 23. We disagree and find this argument similarly waived.

The right to cross-examine witnesses, although fundamental, is not absolute. *See Commonwealth v. Rosser*, 135 A.3d 1077, 1088 (Pa. Super. 2016) (en banc). "A trial court has discretion to determine both the scope and the permissible limits of cross-examination." *Commonwealth v. Briggs*, 12 A.3d 291, 335 (Pa. 2011) (citation omitted). "[W]henever a prosecution witness may be biased in favor of the prosecution[,] . . . that possible bias, in fairness, must be made known to the jury." *Commonwealth v. Lane*, 621 A.2d 566, 566 (Pa. 1993) (citation omitted). The admission of evidence of a conviction of a crime involving dishonesty or false statements, commonly referred to as *crimen falsi* offenses, is permitted for the sole purpose of

attacking the credibility of a witness. *See* Pa.R.E. 609(a). We will not reverse the trial judge's exercise of discretion except in a clear abuse of that discretion, or an error of law. *See Briggs*, 12 A.3d at 335. Furthermore, a trial court does not abuse its discretion when it precludes cross-examination based on inadmissible evidence. *See Commonwealth v. Rashi*, 160 A.3d 838, 843 (Pa. Super. 2017).

There is no basis for the claim that the introduction of the CI's pending criminal docket would have suggested to the jury that the CI was cooperating for his benefit. The jury already knew that the CI was assisting police because he hoped for more favorable treatment in his pending criminal cases. *See* N.T. Trial, 3/29/23, at 22 (Trooper Wolfe answering affirmatively when asked "[whether the CI] was assisting [] because he was hoping for more favorable treatment in his own pending criminal cases"). Malik also testified that the CI was imprisoned several times after the controlled buy on April 20, 2022. *Id*. at 85. This information is precisely what the defense sought to elicit from the Commonwealth's witnesses. *See* Appellant's brief, at 22.

Here, we observe that Malik did not call the CI or subpoena anyone who could attest to the CI's full pending criminal docket. *See* N.T. Trial, 3/29/23, at 141. Additionally, the trial judge correctly instructed Malik only to ask Trooper Wolfe specific questions about the CI's record of which the Trooper would have been aware. *See* Pa.R.E. 602 (witness may only testify to matter if witness has personal knowledge of matter). Following the trial court's

instructions, Malik asked Trooper Wolfe if he knew "that the [CI] had multiple pending cases against him." N.T. Trial, 3/29/23, at 35. The Commonwealth objected and **Malik offered to rephrase the question before the court could even rule on the objection**, to which the court agreed. *See* N.T. Trial, 3/29/23, at 35-36.

However, in his brief, Malik mischaracterizes this exchange, asserting that "the Commonwealth objected, and the trial court asked that the question be rephrased." Appellant's Brief, at 20. "We have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal to this Court." ***Commonwealth v. Piper***, 328 A.2d 845, 847 (Pa. 1974); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Malik's failure to allow the trial court to rule on the issue waives his argument. Although the sub-argument is waived, we briefly discuss the remainder of Malik's third sub-argument.

Malik cites to ***Commonwealth v. Britton***, 380 A.2d 807 (Pa. Super. 1977), in support of the allegation that the trial court abused its discretion by improperly limiting questioning. In ***Britton***, the trial court precluded the defendant from cross-examining the victim and describing the appearance of the witness' brother. *Id.* at 810. The ***Britton*** Court determined that the trial court violated the defendant's right to develop a theory of mistaken identification and constitutional right of confrontation. "Appellant was entitled to pursue this line of questioning in order to refute inferences or deductions

arising from the direct testimony or to qualify or destroy the direct testimony relating to identification." ***Id.*** at 811 (quotation marks omitted). The case here is not the same. Malik was not attempting to put forth a theory of mistaken identity, nor did the CI, in fact, testify.

Malik further asserts that the trial court incorrectly stated that "the police did not rely on the word of the informant in their investigation." Appellant's brief, at 22. Although Trooper Wolfe relied on the CI to obtain Malik's name and set up the drug buy, the entire investigation was observed and overseen by Trooper Wolfe and other members of law enforcement. The CI's potential bias is irrelevant because law enforcement observed and controlled the entire transaction. Trooper Wolfe testified that, "we never lost sight of the confidential informant during the entire arranged transaction." N.T. Trial, 3/29/23, at 44. This argument fails.

In summary, we conclude that the evidence was sufficient to sustain the verdict, ***Brewer***, ***supra***, that the trial court did not err when it denied Malik's post-sentence motion that the verdict was against the weight of the evidence, ***Mucci***, ***supra***, and that Malik waived his third issue that the trial court abused its discretion in its evidentiary rulings. ***Distefano***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/10/2024